Kevin T. Simon SBN-180967
Law Offices of Simon & Resnik, LLP
15233 Ventura Blvd., Suite 300
Sherman Oaks, CA 91403
Telephone (818) 783-6251
Facsimile (818) 783-6253

Attorney for Debtor and Movant
Edith C. Mejia

## UNITED STATES BANRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

EDITH C. MEJIA,

                Debtor

EDITH C. MEJIA,

                Movant

v.

WELLS FARGO BANK,

                Respondent

CASE No.: SV09-26541-MT
CHAPTER 13

**MOTION TO EXTINGUISH SECOND DEED OF TRUST (LIEN) OF WELLS FARGO BANK; POINTS AND AUTHORITIES IN SUPPORT; DECLARATIONS OF EDITH C. MEJIA AND JOHN HAQQ IN SUPPORT THEREOF;**

DATE: April 13, 2010
TIME:  9:00 AM
CTRM: 302

**TO THE HONORABLE MAUREEN TIGHE, THE CHAPTER 13 TRUSTEE, AND RESPONDENT:**

## I.

## FACTS

The instant bankruptcy case, Case No.: SV09-26541-MT, was filed to save real property including Debtor's principle residence located at 1672 Barnes Street, Simi Valley, CA 93063 ("The Property").

The Property is worth no more than $385,000.00 based on a licensed California appraiser's Uniform Residential Appraisal Report reflecting current value. Attached hereto and incorporated by reference is the declaration of John Haqq, licensed California appraiser, to that effect.

The lien of the First Deed of Trust is currently held by JP Morgan Chase Bank. The First Deed of Trust is currently at least $509,903.21, based upon a proof of claim filed by JP Morgan Chase Bank. Attached as Exhibit "A" to the Declaration of the Debtor is a true and correct copy of a proof of claim filed by JP Morgan Chase Bank. The Second Deed of Trust is currently held by Wells Fargo Bank. The amount owing on the Second Trust Deed is currently at least $71,014.04, based upon a proof of claim filed by Wells Fargo Bank. Attached as Exhibit "B" to the Declaration of Debtor is a true and correct copy of a proof of claim filed by Wells Fargo Bank.

## II.

### ARGUMENT

#### A.  A SECURED CLAIM IS SECURED ONLY TO THE EXTENT OF THE VALUE OF THE COLLATERAL, AND UNALLOWED SECURED CLAIMS ARE VOID.

11U.S.C. Section 506(a) states that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to a setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. Section 506(d) states that:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is **void**. (Emphasis added)

**B.    THE DEBTOR MAY REQUEST AND THE COURT MAY ENTER AN ORDER THAT VALUES COLLATERAL WHICH IS PROPERT OF THE BANKRUPTCY ESTATE AND WHICH SECURES A CLAIM OF A CREDITOR AGAINST THE DEBTOR.**

Bankruptcy Rule 3012 states that the court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party and after a noticed hearing.

**C.    THE LIEN SHOULD BE EXTINGUISHED AND RECONVEYED SINCE THE PROPERTY IS WORTH $385,000.00 OR LESS, AND THE FIRST DEED OF TRUST IS $509,903.21 THUS THE LIEN IS AVOIDABLE AND SHOULD BE REMOVED.**

The prevailing case law in our jurisdiction holds that Chapter 13 debtors are entitled to "strip off" totally unsecured junior mortgages on a principal residence where the claims of the junior lienholders are unsecured given that the value of the principal residence is less than the balance owed on the first mortgage. In re Lam, 211 B.R. 36 (9th Cir. B.A.P. 1997). In Lam, the court held a Debtor's completely unsecured junior mortgage could be stripped off his principal residence, holding that:

> The Nobleman decision holding that section 1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protections of section 1322(b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing discharge ability of unsecured claims.

In re Lam followed the earlier decision of In re Geyer, 203 B.R. 726 (S.D. Cal 1996). In Geyer, the court sustained the Debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d), and held that a Chapter 13 debtor may strip off a lien on his or her primary residence when the lienholder's interest is totally unsecured, stating that:

… the term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protections against modification contained in section 1322(b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under section 506(d) when the lienholder's interest is totally unsecured.

In re Geyer, 203 B.R. 726, 729 (S.D. Cal. 1996).

Indeed, The Ninth Circuit allows this when there is no equity to which the lien of the junior mortgage will attach. In re Zimmer, 313 F.3d 1220 (C.A.9 (Cal.), 2002). Thus if there is no equity to which a junior lien attaches, that debt becomes an unsecured claim and can be removed as a lien on the property on entry of the chapter 13 discharge. It need not be paid the same percent as other unsecured creditors.

Courts throughout the country agree that the decision of the United States Supreme Court in Nobleman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed 228 (June 1, 1993) which prohibits a creditor's claim on residential real estate from being bifurcated into secured and unsecured portions and the creditor's rights under the unsecured portions from being modified does not prohibit a Chapter 13 Debtor from stripping off a totally unsecured mortgage on a principal residence. In re Lam, supra; In re Geyer, 203 B.R. 726; Woodhouse v. Woodhouse, 172 B.R. 1 (D. Rhode Island, 1984); In re Sette, 164 B.R. 453, 456(Bankr. E.D.N.Y. 1994); In re Williams, 161 B.R. 27 (Bankr. E.D.Ky. 1993); In re Moncrief, 163 B.R. 492 (Bankr. E.D.Ky. 1993) In re Hornes, 160 B.R. 709 (Bankr. D. Conn. 1993); In re Plouffe, 157 B.R. 198 (Bankr. D. Conn. 1993) (a literal reading of Section 1322(b)(2) does exclude a mortgagee whose secured interest is zero).

In the case at bar, the Property to be retained in the Chapter 13 Plan is Debtor's principle residence. The value of the Property is $385,000.00 or less, yet the value of the First Deed of Trust is at least $509,903.21. Thus, the secured interest of the Second Deed of Trust is zero since there is absolutely no equity to which the Second Deed of Trust can attach. Therefore, the Second Deed of Trust should be extinguished and treated as unsecured for purposes of the instant Chapter 13 proceeding.

## D.    IN RE SEWSNUP IS DISGUISHED FROM LIEN STRIPPING IN THE INSTANT CASE

The Chapter 7 case of Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773, 116

L.Ed.2d 903 (1992) has no application to this Chapter 13 case.  The relevant cases are the Chapter 13 cases which Movant/Debtor cites above which turn on the many courts' interpretations of Section 1322(b)(2) of the Bankruptcy Code to mean that under Section 1322(b)(2) a Chapter 13 plan may modify the rights of secured claims, other than a claim **secured** only by a security interest in real property that is the debtor's principal residence, and that this section, in light of Section 506(a), does not preclude modification by a Chapter 13 plan of the rights of holders of unsecured claims; to wit, junior mortgages which are completely unsecured.

To this end, Justice Scalia, in his dissent in <u>Dewsnup</u>, points out the difference between lien stripping in that Chapter 7 case and lien stripping in a Chapter 13 case when he states that,

> Respondents assume, for example, that a debtor in a chapter 13 cannot strip down a mortgage placed on the debtor's home,; but that assumption may beg the very question the Court answers today. True, Section 1322(b)(2) provides that Chapter 13 filers may not "modify the rights of secured claims", that are "secured only by a security interest in real property that is the debtor's principal residence.  But this can be and has been read, in light of Section 506(a), to prohibit modification of the mortgagee's rights only with respect to the operation of his claim that is deemed secured under the Code. <u>see</u>, e.g., <u>In re Hart</u> 923 F.2d 1410, 1415 (CA 10 1991); <u>Wilson v. Commonwealth Mortgage Corp.</u>, 895 F.2d 123, 127 (CA3 1990)

<u>Dewsnup</u>, 502 U.S. 410, 428, 112 S.Ct. 773, 784.

In <u>Dever v. Internal Revenue Service</u>, 164 B.R. 132 (C.D. Cal. 1994), Judge Fenning held that in spite of <u>Dewsnup</u>, stripping an IRS lien on a principal residence is permissible in a Chapter 11 case.  The Court noted that while under <u>Dewsnup</u>, Chapter 7 debtors cannot use Section 506 to strip down liens on an undersecured claim, the Supreme Court specifically reserved the question as to the applicability of its ruling in <u>Dewsnup</u> to cases under the reorganization chapters.  164 B.R. 132, 133.  In <u>Dever</u>, the Court discussed the issue of lien stripping in Chapter 13 cases and cited the 10th Circuit case of <u>In re Hart</u> wherein the Court reasoned:

> The dispositive issue in this case is whether Eastland's undersecured loan may be bifurcated into two claims by applying general principles of Section 506(a) to the mortgage and then protecting only the secured claim by provision of Section 1322(b). We believe it can.  923 F.2d 1410, 1413 (10th Cir. 1991).

After citing <u>In re Hart</u>, in <u>Dever</u> the Court went on to state that:

> If Section 506 does not permit debtors to bifurcate undersecured claims and strip down liens to their collateral value, then all secured creditors would be freed of any concern that debtors could reduce the amount of their liens while retaining property. If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322. As Justice Stevens' concurring opinion in <u>Nobleman</u> emphasizes, the legislative history of Section 1322(b)(2) reflects Congressional desire to provide special protections to residential lenders. (citations omitted) The threat must be lien stripping, because no other threat is evident.

<u>Dever v. Internal Revenue Service</u>, 164 B.R. at 141

## III.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Second Deed of Trust be ordered extinguished, and deemed an unsecured claim.

Date: February 26, 2010                   By: _____
                                          Kevin T. Simon
                                          Attorney for the Debtor
                                          Edith C. Mejia

## DECLARATION OF EDITH C. MEJIA IN SUPPORT OF
## MOTION TO EXTINGUISH SECOND DEED OF TRUST (LIEN) OF WELLS FARGO
## BANK

I, Edith C. Mejia, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all of the below statements.

1    I am the Debtor in the instant bankruptcy proceeding, case number SV09-26541-MT.

2    I filed bankruptcy to save my principle residence located at 1672 Barnes Street, Simi Valley, CA 93063 ("The Property").

3    The Property is worth no more than $385,000.00 based on a licensed California appraiser's Residential Appraisal Report reflecting current value.

4    The lien of the First Deed of Trust is currently held by JP Morgan Chase Bank. The First Deed of Trust is currently at least $509,903.21, based upon a proof of claim filed by JP Morgan Chase Bank. Attached as Exhibit "A" to the Declaration of the Debtor is a true and correct copy of a proof of claim filed by JP Morgan Chase Bank.

5    The Second Deed of Trust is currently held by Wells Fargo Bank. The amount owing on the Second Trust Deed is currently at least $71,014.04, based upon a proof of claim filed by Wells Fargo Bank. Attached as Exhibit "B" to the Declaration of Debtor is a true and correct copy of a proof of claim filed by Wells Fargo Bank.

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on February 26, 2010, at Sherman Oaks California.

Edith C. Mejia

# EXHIBIT "A"

| UNITED STATES BANKRUPTCY COURT | Central District of California | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Edith C. Mejia | Case Number: 1:09-bk-26541-MT |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
JP Morgan Chase Bank, NA

□ Check this box to indicate that this claim amends a previously filed claim.

**Name and address where notices should be sent:**
Pite Duncan, LLP

4375 Jutland Drive, Suite 200; P.O. Box 17933
San Diego, CA 92177-0933

**Telephone number:**
(858) 750-7600

Court Claim Number:_____
(If known)

Filed on:_____

**Name and address where payment should be sent** (if different from above):
Chase Home Finance LLC - Ohio
3415 Vision Drive Columbus, OH 43219-6009

**Telephone number:**
(800) 981-3792

□ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

□ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**   $   509,903.21

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**   MONEY LOANED
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:**   xxxxxx3913

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**   ☑ Real Estate   □ Motor Vehicle   □ Other
**Describe:**   1672 Barnes St, Simi Valley, California 93063

**Value of Property:**$_____   **Annual Interest Rate____%**

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: $   18,820.04   **Basis for perfection:** _____

**Amount of Secured Claim:** $   509,903.21   **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

□ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

□ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

□ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

□ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

□ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

□ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| **Date:** 01/11/2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. /s/Stefanie A. Schiff | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT "B"

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT **CENTRAL DISTRICT OF CALIFORNIA** | PROOF OF CLAIM |
|---|---|

| Name of Debtor: EDITH C MEJIA | Case Number: 09-26541 |
|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property): Wells Fargo Bank, N.A.

| Name and address where notices should be sent:<br><br>Wells Fargo Bank, N.A.<br>P. O. Box 14469 MAC X2303-01A<br>Des Moines, IA 50306-9655<br><br>Telephone number: 1-800-241-0039 | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(If known)<br><br>Filed on:_____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br><br>Wells Fargo Operations Center<br>P.O. Box 31557 MAC B6955-01B<br>Billings, MT 59107<br><br>Telephone number: 1-800-241-0039 | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |
|---|---|

| 1. Amount of Claim as of Date Case Filed:  $71,014.04<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim. |
|---|---|

| 2. Basis for Claim: Money Loaned<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
|---|---|
| 3. Last four digits of any number by which creditor identifies debtor: 174355612<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☑ Real Estate  ☐ Motor Vehicle  ☐ Other<br>Describe: 1672 BARNES ST SIMI VALLEY, CA 93063<br><br>Value of Property: $390,000.00 (estimated)  Annual Interest Rate 9.75%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $582.10  Basis for perfection: Mortgage/Deed of Trust<br><br>Amount of Secured Claim: $71,014.04*  Amount Unsecured: $ | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br><br>7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest.  You may also attach a summary.  (See definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | ☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>Amount entitled to priority:<br><br>$ _____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| Date: 01/09/2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s/ Mattie Lightfoot<br>Bankruptcy Representative | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

* or as allowed under Section 506

## DECLARATION OF JOHN HAQQ IN SUPPORT OF
## MOTION TO EXTIGUINSH SECOND DEED OF TRUST (LIEN) OF WELLS FARGO BANK

I, John Haqq, a licensed appraiser, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all of the below statements

1    I am making this declaration in support of the Motion to Extinguish Second Deed of Trust (Lien) of Wells Fargo Bank.

2    On or about December 12, 2009, I appraised real property located at 1672 Barnes Street, Simi Valley, CA 93063 (hereinafter the "Subject Property").

3    Pursuant to my appraisal, the value of the Subject Property on or about December 12, 2009 was valued at $385,000.00.  Attached hereto as Exhibit "C" is a true and correct copy of my appraisal of the Subject Property.

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on February 26, 2010, at Sherman Oaks California

John Haqq

# EXHIBIT "C"



# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
1672 Barnes Street
REF: 029MR 044 TR 1212-02 LOT 138
Simi Valley, CA  93063

### FOR:
Edith C. Mejia
1672 Barnes Street
Simi Valley, CA  93063

### AS OF:
December 12, 2009

### BY:
John Haqq
Valuation Concepts
19360 Rinaldi Street Suite 529
Porter Ranch, CA 91326

# Uniform Residential Appraisal Report

File # 1672BarVC0620

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 1672 Barnes Street | City | Simi Valley | State | CA | Zip Code | 93063 |

| Borrower | Edith C. Mejia | Owner of Public Record | Edith C. Mejia | County | Ventura |

Legal Description  REF: 029MR 044 TR 1212-02 LOT 138

| Assessor's Parcel # | 626-0-264-135 | Tax Year | 2009 | R.E. Taxes $ | 4,998.28 |

| Neighborhood Name | Simi Valley | Map Reference | 498/E3 | Census Tract | 80.02 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ N/A    ☐ PUD   HOA $ N/A    ☐ per year  ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Market Value

Lender/Client  Edith C. Mejia    Address  1672 Barnes Street, Simi Valley, CA 93063

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?    ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).   The subject property has not been listed in MLS within the past 12 months of the effective date of the appraisal which is 12/12/2009.

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   This appraisal report was performed for market value purposes, therefore no purchase contract was applicable.

| Contract Price $ N/A | Date of Contract N/A | | Is the property seller the owner of public record? ☐ Yes ☐ No | Data Source(s) |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?    ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.    N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | Property Values | ☐ Increasing ☐ Stable ☒ Declining | | PRICE | AGE | One-Unit | 80 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply | ☐ Shortage ☐ In Balance ☒ Over Supply | | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | Marketing Time | ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 230K Low | 25 | Multi-Family | 5 % |
| Neighborhood Boundaries | North by Los Angeles Avenue, south by Royal Avenue, east by Tapo Canyon | | | | 440K High | 65 | Commercial | 10 % |
| Road, and west by Sycamore Drive. | | | | | 375K Pred. | 45 | Other | % |

Neighborhood Description    See Additional Comments.

Market Conditions (including support for the above conclusions)    There is currently a balanced supply of active listings to meet demand for the area. Property values are declining, and this considered an REO/Short Sale driven market. MLS statistics indicate that sellers are receiving 90% to 95% of listing price on average, with an average marketing time of 90 to 180 days. Seller concessions typically include 1 to 3 points being paid.

| Dimensions Please See Plat Map | Area 9,000 SF | Shape Rectangular | View No View |

Specific Zoning Classification RM-3    Zoning Description Single Family Residence

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?    ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley No Alley | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X    FEMA Map # 0604210008B    FEMA Map Date 09/03/1997

Are the utilities and off-site improvements typical for the market area?    ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?    ☒ Yes ☐ No  If Yes, describe

No other significant factors relating to the subject's site, topography, shape, size, or drainage were noted.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | Foundation Walls | Wood/Average | Floors | Carpet/Tile/Average |
| # of Stories  One | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | Stucco/Average | Walls | Drywall/Average |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area  N/A sq.ft. | | Roof Surface | Comp Shingle/Avg | Trim/Finish | Wood/Average |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish  N/A % | | Gutters & Downspouts | Aluminum | Bath Floor | Tile/Average |
| Design (Style)  Conventional | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Dual Pane/Average | Bath Wainscot | Tile/Average |
| Year Built  1961 | | Evidence of ☐ Infestation N/A | | Storm Sash/Insulated | None noted | Car Storage | ☐ None |
| Effective Age (Yrs)  10-15 | | ☐ Dampness ☐ Settlement | | Screens | Screens/Average | ☐ Driveway  # of Cars  3 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | | | Amenities ☐ Woodstove(s) # | | Driveway Surface  Concrete |
| ☐ Drop Stair ☐ Stairs | ☐ Other | Fuel  Gas | | ☐ Fireplace(s) # ☒ Fence Block | | ☒ Garage  # of Cars  2 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | | | ☒ Patio/Deck Patio ☒ Porch Covrd Entr | | ☐ Carport  # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual | ☐ Other | | ☐ Pool Pool | ☐ Other | ☒ Att. ☐ Det. ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   9  Rooms   4  Bedrooms   3.00  Bath(s)   1,689  Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)    See Additional Comments.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject is maintained in good condition with no deferred maintenance that would impair marketability. Functional depreciation was accounted for the subject's inground pool amenity.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    ☒ Yes ☐ No  If No, describe

| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

## Uniform Residential Appraisal Report

File # 1672BarVC0620

There are **N/A** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **N/A** to $ **N/A** .
There are **N/A** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **N/A** to $ **N/A** .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1672 Barnes Street | 3264 Royal Avenue | | 1898 Burch Avenue | | 3493 Skagway Street | |
| | Simi Valley, CA 93063 | Simi Valley, CA 93063 | | Simi Valley, CA 93063 | | Simi Valley, CA 93063 | |
| Proximity to Subject | | 0.47 miles SW | | 0.20 miles N | | 0.24 miles NW | |
| Sale Price | $ N/A | $ | 389,000 | $ | 375,000 | $ | 320,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 225.12 sq.ft. | | $ 223.48 sq.ft. | | $ 205.26 sq.ft. | |
| Data Source(s) | | NDC/MLS/REALTX | | NDC/MLS/REALTX | | NDC/MLS/REALTX | |
| Verification Source(s) | | Doc# 183545 | | Doc# 181564 | | Doc# 157487 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | FHA Financing | | FHA Financing | | FHA Financing | |
| Concessions | | 1st-381,954 | | 1st-$368,207 | | 1st-$314,204 | |
| Date of Sale/Time | | 11/11/2009 | | 11/06/2009 | | 09/22/2009 | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 9,000 SF | 10,332 SF | -1,332 | 8,298 SF | | 8,400 SF | |
| View | No View | No View | | No View | | No View | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 48 Years | 48 Years | | 48 Years | | 48 Years | |
| Condition | Average | Average | | Average | | Inferior | +20,000 |
| Above Grade | Total \| Bdrms. \| Baths | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | +10,000 |
| Room Count | 9 \| 4 \| 3.00 | 7 \| 3 \| 2.00 | +5,000 | 8 \| 4 \| 2.00 | +5,000 | 7 \| 3 \| 2.00 | +5,000 |
| Gross Living Area | 1,689 sq.ft. | 1,728 sq.ft. | 0 | 1,678 sq.ft. | 0 | 1,559 sq.ft. | +13,000 |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Pool/Spa | Pool | Pool | | Pool | | No Pool/No Spa | |
| Assessor's Parcel Number | 626-0-264-135 | 642-0-116-015 | | 626-0-202-075 | | 626-0-202-035 | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 13,668 | ☒ + ☐ - | $ 5,000 | ☒ + ☐ - | $ 48,000 |
| Adjusted Sale Price | | Net Adj. % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. % | $ 402,668 | Gross Adj. % | $ 380,000 | Gross Adj. % | $ 368,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   NDC Data
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   NDC Data
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/23/2007 | No Additional Transactions | No Additional Transactions | No Additional Transactions |
| Price of Prior Sale/Transfer | Refinance/Deed of Trust | within the Last 12 months | within the Last 12 months | within the Last 12 months |
| Data Source(s) | REALTX/Doc# 83774 | REALTX | REALTX | REALTX |
| Effective Date of Data Source(s) | 12/12/2009 | 12/12/2009 | 12/12/2009 | 12/12/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales   The subject property has a prior refinance/deed of trust transaction within
the past 36 months noted on 04/23/2007. Comparable #4 has a recent trustee sale noted within the last 12 months. No prior sales within the past
12 months for Comparables #1, #2, and #3.. Sales and history was researched through MLS and NDC/Public Records.

Summary of Sales Comparison Approach   See Additional Comments.

Indicated Value by Sales Comparison Approach $  385,000

Indicated Value by Sales Comparison Approach $ 385,000   Cost Approach (if developed) $ 389,419   Income Approach (if developed) $
The sales comparison approach is given the most weight for it reflects buyer actions and is the best indicator of value. The cost approach supports
the sales comparison approach.  The income approach is considered inapplicable as the area is primarily owner-occupied.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  Please see Statement of Limiting
Conditions.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 385,000 , as of December 12, 2009 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                          Page 2 of 6                          Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

File # 1672BarVC0620

See attached addenda.

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Site value has been determined by the extraction
process due to lack of vacant land sales in the area. Ratio of land to value is typical for the area.

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 150,000 |
| Source of cost data  Marshall and Swift | DWELLING | 1,689 Sq.Ft. @ $ | 100.00 | =$ | 168,900 |
| Quality rating from cost service  Average  Effective date of cost data  2009 | | N/A Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Swimming Pool | | | =$ | 20,000 |
| Land to Improvement Ratio is not uncommon for "liked properties" in this | Garage/Carport | 492 Sq.Ft. @ $ | 35.00 | =$ | 17,220 |
| market area. Physical Depreciation is based on effective age and | Total Estimate of Cost-New | | | =$ | 206,120 |
| deferred maintenance from a 65 year base. | Less     Physical | Functional | External | | |
| | Depreciation | 31,701 | 10,000 | =$( | 41,701) |
| | Depreciated Cost of Improvements | | | =$ | 164,419 |
| | "As-is" Value of Site Improvements | | | =$ | 75,000 |
| Estimated Remaining Economic Life (HUD and VA only)        55 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 389,419 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier        = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 3 of 6 | Fannie Mae Form 1004 March 2005 |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 1672BarVC0620

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 1672BarVC0620

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report

File # 1672BarVC0620

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER   Valuation Concepts | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  John Hagg | Name |
| Company Name  Valuation Concepts | Company Name |
| Company Address  19360 Rinaldi Street #529, Porter Ranch, CA 93063 | Company Address |
| Telephone Number  877-466-9817 | Telephone Number |
| Email Address  appraisals@valuationconceptsca.com | Email Address |
| Date of Signature and Report  December 12, 2009 | Date of Signature |
| Effective Date of Appraisal  December 12, 2009 | State Certification # |
| State Certification #  AR027627 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  California | |
| Expiration Date of Certification or License  07/08/2010 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 1672 Barnes Street | Date of Inspection _____ |
| Simi Valley, CA 93063 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  385,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name  Edith C. Mejia | COMPARABLE SALES |
| Company Name  Edith C. Mejia | |
| Company Address  1672 Barnes Street, Simi Valley, CA 93063 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection _____ |

| Freddie Mac Form 70 March 2005 | Page 6 of 6 | Fannie Mae Form 1004 March 2005 |
|---|---|---|

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 1672BarVC0620

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 1672 Barnes Street | 3854 Royal Avenue | | | | | |
| | Simi Valley, CA 93063 | Simi Valley, CA 93063 | | | | | |
| Proximity to Subject | | 0.39 miles E | | | | | |
| Sale Price | $ N/A | $ 375,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | sq.ft. $ | $ 217.27 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | NDC/MLS/REALTX | | | | | |
| Verification Source(s) | | Doc# 123436 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | FHA Financing | | | | | |
| Concessions | | 1st-$300,000 | | | | | |
| Date of Sale/Time | | 07/22/2009 | | | | | |
| Location | Average | Average | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 9,000 SF | 8,000 SF | +1,000 | | | | |
| View | No View | No View | | | | | |
| Design (Style) | Conventional | Conventional | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Actual Age | 48 Years | 48 Years | | | | | |
| Condition | Average | Average | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 9  4  3.00 | 9  4  3.00 | | | | | |
| Gross Living Area | 1,689 sq.ft. | 1,726 sq.ft. | 0 | sq.ft. | | sq.ft. | |
| Basement & Finished | N/A | N/A | | | | | |
| Rooms Below Grade | N/A | N/A | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | FAU/Central | FAU/Central | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | | | | |
| Porch/Patio/Deck | Patio | Patio | | | | | |
| Pool/Spa | Pool | No Pool/No Spa | +10,000 | | | | |
| Assessor's Parcel Number | 626-0-264-135 | 626-0-284-165 | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 11,000 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj.        % | | Net Adj.        % | | Net Adj.        % | |
| of Comparables | | Gross Adj.       % | $ 386,000 | Gross Adj.       % | $ | Gross Adj.       % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/23/2007 | 03/26/2009 | | |
| Price of Prior Sale/Transfer | Refinance/Deed of Trust | $244,500/Trustee Sale | | |
| Data Source(s) | REALTX/Doc# 83774 | REALTX/Doc# 46798 | | |
| Effective Date of Data Source(s) | 12/12/2009 | 12/12/2009 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales      Please See Page 2.

Analysis/Comments

Freddie Mac Form 70 March 2005                                                           Fannie Mae Form 1004 March 2005

## Supplemental Addendum

File No. 1672BarVC0620

| Borrower/Client | Edith C. Mejia | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1672 Barnes Street | | | | | | |
| City | Simi Valley | County | Ventura | State | CA | Zip Code | 93063 |
| Lender | Edith C. Mejia | | | | | | |

**• URAR : Additional Comments**

URAR: NEIGHBORHOOD MARKET FACTORS:
The subject is located in the city of Simi Valley within Ventura County. This is an established neighborhood consisting of a mix of conventional and bungalow style SFR tract homes of various ages, displaying general similarity in design, appeal and utility, with variations in size. There's an adequate mix of multifamily residences, condominiums, commercial activity, employment opportunities and public support facilities, (schools, police, hospitals, recreation, fire stations, houses of worship, etc.) which are beneficial to the community, but along with traffic, may pose an adverse affect upon residences in close proximity to them. No atypical social, economic, governmental or environmental trends or characteristics were observed at this time.

URAR: ADDITIONAL FEATURES:
Unless otherwise stated, all improvements given value in this report appear legal and conforming to market area standards. Field measurements and room counts utilized.

URAR: SALES COMPARISON COMMENTS:

It should be noted that the subject's market area reflect's a broad range of values for properties with generally similar characteristics within the subject's immediate neighborhood and even broader based region. This was demonstrated to some degree by the comparables utilized in the report, but even more dramatically by a number of sales retained in the appraiser's file that were considered but deemed less applicable and subsequently not used. Though some of the market's reaction to various properties cannot be fully understood without more extensive information, which is typically unvailable through public information sources, it appears that much of the disparity in sales prices can be attributed to the cumultive impact of various property characteristics which are the more common factors affecting value (i.e., lot sizes, amenities, upgrading, GLA, external influences and various degrees of appeal based on architectural style, hardscaping, and overall general appeal). This has resulted in a broader range of difference in actual sale prices than would typically be desired, and more adjustments than normally required, but it was deemed necessary to properly reflect the subject's market area.  With consideration to all of the economic, external, functional and physical market factors influencing the subject, its market area and the sales that were available for comparative analysis, it is the appraisers opinion that the comparables used are the most reliable indicators of market value for the subject property.

GRID ADJUSTMENTS:  Unless otherwise noted, all Market Grid adjustments are deemed to be self-explanatory; but all adjustments to the comparable sales reflect the appraiser's best estimates of the market's reaction to the differences between the subject property and the comparables. Though paired sales analysis is conducted to the degree that the available data allows, in most cases, data is too limited to be conclusively definitive and the adjustments are as much "qualitative" (reflecting generally positive or negative market influences) as they are quantitative (irrefutably derived from hard core data and adjusted). This approach adequately serves to ascribe or to depreciate value to any factor that is generally considered to have a measurable impact upon value.  In any case, the adjustment values utilized are reasonable relative to the limited amount of data that is typically available; as well as to anticipated market reaction to various property characteristics as is noted through experience in this and like markets and input from local brokers.

- Site adjustments were made at $1.00 per square foot (For differences over 1000 sqft)
- Pool amenity adjustments were made at $10,000
- Bedrooms under 4 were adjusted at $10,000 each.
- Bathrooms were adjusted at $5,000 each.
- Condition adjustments were made at $20,000 when applicable.

Comparables #1through #4 were all given consideration  for their close proximity to the subject property, recent dates of sale and similarity in GLA, functional utility, and year built and design and appeal at the time of their last sales transactions. Comparable #3 was given a condition adjustment for its overall inferior condition to the subject property at the time of its last sales transaction. All closed sales are adjusted under FNMA Adjustment Guidelines not exceeding 25% Gross and 15% Net adjustments. Value is derived from the actual sales prices and adjusted values of all the sales with all comparables contributing to a reliable value range. Due consideration was given to comparables #1 and #2 for their most recent dates of sale, close proximity to the subject property and similarity in GLA and functional utility.

| | | | | |
|---|---|---|---|---|
| Signature | _John Hagg (signature)_ | Signature | | |
| Name | John Hagg | Name | | |
| Date Signed | December 12, 2009 | Date Signed | | |
| State Certification # | AR027627 | State | Californ | State Certification # | | State |
| Or State License # | | State | Or State License # | | State |

## Location Map

| Borrower/Client | Edith C. Mejia | | | | |
|---|---|---|---|---|---|
| Property Address | 1672 Barnes Street | | | | |
| City | Simi Valley | County Ventura | | State CA | Zip Code 93063 |
| Lender | Edith C. Mejia | | | | |



## Subject Photo Page

| | |
|---|---|
| Borrower/Client | Edith C. Mejia |
| Property Address | 1672 Barnes Street |
| City | Simi Valley | County | Ventura | State | CA | Zip Code | 93063 |
| Lender | Edith C. Mejia |



### Subject Front

1672 Barnes Street

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,689 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.00 |
| Location | Average |
| View | No View |
| Site | 9,000 SF |
| Quality | Average |
| Age | 48 Years |



### Subject Rear



### Subject Street

## Subject Photo Page

| Borrower/Client | Edith C. Mejia | | | | |
|---|---|---|---|---|---|
| Property Address | 1672 Barnes Street | | | | |
| City | Simi Valley | County | Ventura | State CA | Zip Code 93063 |
| Lender | Edith C. Mejia | | | | |



### Subject Interior

1672 Barnes Street

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,689 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.00 |
| Location | Average |
| View | No View |
| Site | 9,000 SF |
| Quality | Average |
| Age | 48 Years |



### Subject Interior



### Subject Pool Area

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | Edith C. Mejia |
| Property Address | 1672 Barnes Street |
| City | Simi Valley | County Ventura | State CA | Zip Code 93063 |
| Lender | Edith C. Mejia |



### Comparable 1
3264 Royal Avenue
| Prox. to Subject | 0.47 miles SW |
|---|---|
| Sales Price | 389,000 |
| Gross Living Area | 1,728 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Average |
| View | No View |
| Site | 10,332 SF |
| Quality | Average |
| Age | 48 Years |



### Comparable 2
1898 Burch Avenue
| Prox. to Subject | 0.20 miles N |
|---|---|
| Sales Price | 375,000 |
| Gross Living Area | 1,678 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.00 |
| Location | Average |
| View | No View |
| Site | 8,298 SF |
| Quality | Average |
| Age | 48 Years |



### Comparable 3
3493 Skagway Street
| Prox. to Subject | 0.24 miles NW |
|---|---|
| Sales Price | 320,000 |
| Gross Living Area | 1,559 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Average |
| View | No View |
| Site | 8,400 SF |
| Quality | Average |
| Age | 48 Years |

Main File No. 1672BarVC0620| Page #18

## Comparable Photo Page

| Borrower/Client | Edith C. Mejia | | | | |
|---|---|---|---|---|---|
| Property Address | 1672 Barnes Street | | | | |
| City | Simi Valley | County | Ventura | State CA | Zip Code 93063 |
| Lender | Edith C. Mejia | | | | |



### Comparable 4

3854 Royal Avenue
| | |
|---|---|
| Prox. to Subject | 0.39 miles E |
| Sales Price | 375,000 |
| Gross Living Area | 1,726 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.00 |
| Location | Average |
| View | No View |
| Site | 8,000 SF |
| Quality | Average |
| Age | 48 Years |

### 5

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### 6

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

Main File No. 1672BarVC0620 Page #19

## Building Sketch

| Borrower/Client | Edith C. Mejia | | | | |
|---|---|---|---|---|---|
| Property Address | 1672 Barnes Street | | | | |
| City | Simi Valley | County | Ventura | State CA | Zip Code 93063 |
| Lender | Edith C. Mejia | | | | |



| In re:<br>Edith C. Mejia | CHAPTER 13 |
|---|---|
| Debtor(s). | CASE NUMBER: SV09-26541-MT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 15233 Ventura Blvd., Suite 300, Sherman Oaks, CA 91403.

The foregoing document described **MOTION TO EXTINGUISH SECOND DEED OF TRUST (LIEN) OF WELLS FARGO BANK;** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

☐ Service information continued on attached page

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On February 26, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 26, 2010 | Andre Moradian  | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**Debtor**
Edith C. Mejia
1672 Barnes Street
Simi Valley, CA 93063


**Chapter 13 Trustee**
Elizabeth F. Rojas
Noble Professional Center
15060 Ventura Blvd., Suite 240
Sherman Oaks, CA 91403


**JP Morgan Chase Bank**
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
PO Box 17933
San Diego, CA 92177-0933


**Wells Fargo Bank, NA**
PO Box 14469
MAC X2303-01A
Des Moines, IA 50306-9655


**Wells Fargo Bank, NA**
PO Box 31557
MAC B6955-01B
Billings, MT 59107


**Agent for Service of Process for Wells Fargo Bank, NA**
C T Corporation System
818 West Seventh Street
Los Angeles, CA 90017